John Mills v. Christopher LaRose. Argument not to exceed 15 minutes per side. Mr. Giacomo, for the appellant, you may proceed. Good afternoon, your honors. Patrick Giacomo on behalf of John Mills in this case. Due process requires a state to prove beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged. In this case, felony murder. Where even the Ohio Court of Appeals could not identify the predicate felony, the necessary facts could not be established let alone proven beyond a reasonable doubt. The evidence was therefore insufficient to convict Mr. Mills of felony murder. I'm happy to go through the outline of arguments as I made my brief, but otherwise I'd be much more interested in answering any questions that you may have. I have one question at the outset, pardon me. He was convicted of both felony murder and felony manslaughter, right? That's correct, your honor. The felony manslaughter issue is not before us today? That's correct. So if we were to agree with you, he would still stand convicted? If we were to agree with your arguments today, he would still stand convicted of the felony manslaughter? That's correct, as well as the felonious assault. Thank you. Well, I guess one question I have, I mean there are two theories here, whether he was complicit in Cameron's assault on Jim, right? Cameron's the guy who swung the leadership figure here. I mean he's the father of these two young men, correct? True. They all have weapons as they're walking to the scene of this encounter, right? The two young men have their boards. I'm not sure where they got the weapons or when in the timeline, but yes, by the time of the actual fight, yes, everyone is armed with a board of some sort. I thought something and the two young men have what, two by fours? Yeah, I think so. At some point, they definitely did have those items. And then John Mills draws a lethal weapon. Is it totally unforeseeable that these two other men, his sons, would then swing the two by four and use those as well at that point in this melee? I don't think it's unforeseeable that the sons would have used the boards at all. I think what is unforeseeable is that Cameron, John Mills' son, would have swung the board and hit Jim Mills, who was John Mills' father in this case. Certainly, that's not foreseeable in this context where there was this melee between two feuding families and Jim Mills was there as a neutral essentially. I mean, wasn't part of the grievance they had against the decedent that he had aligned himself with the other family in the past? There was definitely testimony that the people on John's side of the fight were not pleased with Jim for doing anything other than fully supporting the John Cameron side of the fight. But I mean, isn't there testimony that would allow a rational jury to find that they were upset with the decedent because in the past, not just here, he had aligned himself with this other family? I think that's fair under this circumstance. So, I mean, certainly with all these layers of deference we have here, we have to take that as a fact. And so they're mad at him. They're having a fight with that family. These guys brought the you know, you swing a board at somebody's head, just like a baseball bat, you can kill them. I mean, why isn't that sufficiently foreseeable for any rational jurist to say that any rational jury could find that sufficient? Well, there's two things that I would say in response to that. The first is if we refer back to the state versus Gardner, the Ohio Supreme Court plurality opinion, which was then adopted in state versus O'Neill, the important takeaway in a case like this where you have the multiple acts type case is that there has to be sufficient evidence to support all of the potential acts, even if they don't have to be specifically identified. And so what I'm getting at with respect to that is that means even if it's true that there was sufficient evidence to sustain a the question of whether the felonious assault of Junior would have also been supported by sufficient evidence for a felony murder conviction. That's the first thing. The second thing is, with respect... That's different than Mack here. I'm sorry? When you say Junior, who's Junior? Mack is, so Mack Junior is Junior. I refer to him throughout as Junior. Let's call him Mack. Mack Senior. Okay.  But the other thing to take to heart here is the fact that at closing, the prosecutor specifically stated that he's never alleged that anyone intentionally hit Jim Mills, including Cameron, who did in fact hit Jim Mills. And so then you have this issue of whether Cameron even committed a felonious assault against Jim Mills. He took a plea for feloniously assaulting, I think, Timberley. Wait a minute. I mean, he killed him by swinging a board at his head. Correct. Regardless of what the prosecutor says in closing, they can find that he feloniously assaulted the guy that he killed in that manner, right? But I think the distinction here is that the prosecutor has stated that he never supported the necessary mens rea of that crime, which is knowingly doing that. I don't know. I mean, how do you get around that when he's swinging a two by four at the man's temple? I mean, frankly, from my reading of the facts, and obviously I understand the standards here, it's not clear to me whether anyone was certain that he swung it intentionally at the head or was a real backer. I don't know. Obviously, you have to hit someone pretty hard with a two by four to kill them. Well, you know, it depends on where you hit him, I guess. Sure. But the other thing is, then even if we say that is the case, we still have to find the incitement angle. And that's problematic here, like many of the other things, because we have this complicity argument that's been stacked on top of everything. And the prosecutor never identified the particular species of complicity that was applicable here. So we don't know whether he was inciting or whether he was procuring. I mean, we can pretty reasonably establish this wasn't an irresponsible person. So is this the causation part of it that you're talking about now? Or is this whether there was a felonious assault? This is the complicity part of it. So whether there was a felonious assault that can be attributed to John Mills. It's the attribution part that we're concerned about here. At this particular moment, yes. Okay, go ahead. Because... And that's foreseeability, like proximate cause type test? No. No, I'm talking about which theory of complicity, whether he was aiding and abetting or inciting, because there's several as it's set forth in the Ohio statute. Right. And the prosecutor never selected one. So we don't know what the jury was thinking. But we do know that under... Do you argue that to the trial court? I mean, I'm at this case on CJA, but... I mean, was that argument presented? I don't think so. No, I'm not trying to find that there was, you know, an independent failure to instruct the jury. I'm just saying all of this, I think, is intertwined with the sufficiency... I understand, but I don't mean... Not at all. I had some difficulty with this case, candidly. I had some difficulty. It's a challenging case to try to get your hands on. I guess because the facts are kind of confused. Absolutely. But as I understand it, there's a felonious assault, which you even are not appealing that there was a felonious assault. That's correct. The question is whether the... and not even appealing whether a felonious assault caused a manslaughter. You're saying your issue is whether there's sufficient evidence for a jury to conclude that a felonious assault caused the murder. Correct. And not just any felonious assault, some particular felonious assault. And to briefly go back to what you just said, Your Honor, the conviction for manslaughter was predicated not on the felonious assault, but on a third degree felony, which is called inciting to violence. So it's not that there's the same predicate felony for the murder charge and the manslaughter charge. The inciting to violence, because it's a third degree felony, cannot be the predicate for a felony murder charge. So as far as things that were not... Incitement to violence was enough to support, or at least you're not challenging, was enough to support the manslaughter charge. That's correct. But he has to have a felonious assault predicate for the murder charge. That's correct. There has to be a first or second degree violent felony, which... And he's convicted of such a felony. Correct. So there's enough evidence that the felony happened. The question is whether that was sufficiently foreseeable or whatever the standard is for foreseeably grew out of, or sufficiently grew out of to meet the state standard, the murder of the victim. Correct. And so in that particular context... That's a pretty differential standard that we apply under Jackson, isn't it? It's like any jury could have found that. Any rational jury. That's correct. But in this context, as I said earlier, you have to have found sufficient evidence for both of those, for either the felonious assault of Mac... For the felonious assault, you're not really challenging, as I understand. No, that's correct. But I am challenging the causation of that felonious assault because this was obviously a large scuffle. The felonious assault of Mac took place at one point of it. The striking of Jim took place completely separate and separated portion of the fight. And importantly... But all we have to do is find, correct me if I'm wrong, regardless of whether the instructions were correct or not, because you're not really challenging the instructions. Sure. Could this juror have looked and said, yeah, when he led them in and acted kind of in a supervisor, he's kind of the leader, whether he sufficiently, whatever the standard is, foresaw or approximately caused this felonious assault, which did occur, then you lose this appeal, right? Yes, if it's couched in those terms. But I think the distinction here is... But couching it goes to whether the instruction, we just see whether there's enough evidence for the jury for that, right? And here's why there isn't. Because the particular felonious assault here, the holding of the knife or the closed knife to Mac's throat, that in this context would have to have caused somehow Cameron to strike Jim. And there's no rational way you can connect those two things in this fight. If you look at it specifically as that holding of the knife to his neck, you can make an argument like that. But if you look at the overall elements that constituted the felonious assault, you don't only have to look at the instant where the knife touched the neck, do you? I mean, a jury wouldn't have to, would he? I think they would in this case, because the felonious assault of Mac, not some larger undefined involvement in this general fight, is what the predicate felony he was committing. I guess the theory would be for this one juror, larger involvement in something that had as part of it the attack on Mac Jr., right? I see I'm out of time. Do you mind if I respond? Yes, please. Yes, but it's also... The trouble I'm having with this case. I agree. I have plenty of trouble with this case myself. But we've focused on what my trouble is. Yes, yes. And to address your trouble... We could be here all day. To address your trouble. In this case, I think it's particularly important to also notice that while he was charged with also feloniously assaulting Maverick, he was acquitted of that. So to say that the... For all kinds of reasons. Well, right. But to say that the general fight itself necessarily was sufficient to support this complicity for Cameron assumes that if he never... You can have contradicting verdicts. They just may have gotten tired of saying guilty. I mean, it doesn't... If you have enough evidence for one thing and then they also don't find something that seems to follow from their first verdict, that doesn't mean there's not enough evidence for the first one. No, that's true. But what I'm saying with respect to Maverick is when we're talking about causation here, we're saying a rational juror would have to find that both but for and proximately John Mill's assault of Mac caused Cameron to strike Jim somehow. We know for certain, based on the jury's acquittal, that him fighting with Maverick couldn't possibly be the underlying felony predicate. So what I'm saying is the overall fight based on that fact can't itself be sufficient to connect this causal chain. Questions? Further questions? Thank you, counsel. Thank you. Go ahead. May it please the court. I'm Bill Lamb and I represent the warden in this case. The certified issue here is whether there was sufficient evidence to convict and specifically whether the state court's adjudication set forth a proper theory of guilt. I know the court knows this, but I feel I'm compelled to remind you that this is a habeas case and that the court's first task is to look to the result if you are considering the state court's adjudication and second, to determine what arguments or theories could have supported the state court's adjudication. Sir, are you aware of any cases where, in fact, the last state court to consider the matter split on its theory for affirming the conviction? I just have, have you seen any cases where it has this posture? May I come back a little bit to answer the court's question differently? The context is we have a double layer of deference. Sure. I'm going to submit on the Jackson level of deference. I will submit on my brief, then come back to argue the question as to the adjudication. What I'm driving at is Mr. Tacoma's argument about whether we have the deferential at the standard here and I'm just, I think I understand your argument as to why there should be. I'm just wondering if a court has encountered this posture before. No, Your Honor. And I submit that in paragraph 29 of the state court's decision at the first sentence, the state court said the appellant did not appeal the predicate offense of felonious assault. So that was conceded. So that's not even in the case. And paragraph 29 is crucial. Are you answering the question? I'm not aware of any case, Your Honor. That is my... All right. All right. I just want... To find some... Really, to plow some new ground as to how epideference works when you have a two-judge, a two-justice or a two-judge majority and their analysis is inconsistent. With respect to plowing new ground, Your Honor... Well, there's no other case that's like that. I think it's very... The court has to be careful in plowing new ground in light of subparagraph 2254-D1, which states that in habeas, the court considers clearly established federal precedent coming from the United States Supreme Court. And the Supreme Court has said in the case I cited in my brief in a different context, White v. Woodall, you have to be careful finding new ground. Well, but that's... If it's not there, then you have to find for it. That goes to the substantive legal question that the state court passed on and whether there's a federal precedent to sort of drive the state court's decision one way or the other. What we're asking about is whether this counts as a merits decision, I guess, for purposes of whether you get epideference or whether we review it de novo. I mean, as you know, your opponent says we should review de novo because the state court couldn't agree on which theory of guilt should apply here. Naturally, I say you cannot review de novo because there is a state court adjudication. But you don't have any court case which says there's a state court adjudication in the context of conflicting decisions that just lead to one vote, right? To prove a negative, I cannot give you a case like that. But let me add that in the appellant's reply brief, the appellant cited McKinsey v. Smith, the case in this circuit, for the proposition that there was no adjudication. That was the appellant's argument in their reply brief. And I submit that McKinsey v. Smith does not apply here for obvious facts, for obvious reasons. So there's no authority saying, and I submit based upon the reply brief, there's no authority saying that there is no adjudication at all. No, I understand there's no authority going either way. But then that leaves us to ask you questions about what should be the right rule when you have this kind of a situation, right? We could treat it sort of the way that habeas jurisprudence treats procedural default and merits determinations. If the state court just relies only on procedural default and clearly doesn't get to the merits, then I think our precedents are we give de novo review to the merits if we get to it. Is that correct? It's the way some cases go. Other cases are like under Harrington. They say if the state court just didn't tell us what it was deciding upon, then we give that predeference to what it probably might have been thinking. Is that fair? Did I misstate some of the law there? No, Your Honor, but I hope... Well, that shows that there's two different ways we could look at this case. We could look at it as each of those judges is deciding in a way and explicitly not deciding in the other way. And the other judge is deciding the other way and explicitly not deciding the first way, making it very analogous to the procedural default versus the merits kind of distinction. Or you could treat them as, oh, they're all basically Harrington versus Richter. We can just figure out which one we like better and give deference to that. Which should it be? Here, all three judges were unanimous that there was a felonious assault, and that was conceded. But his issue has to do with which one it was and how specific it was to get to the particular one. That's his argument under Jackson. He made it clear, I think, what his argument is under Jackson. Now you're saying that argument not only gets Jackson deference, but also gets Edpa deference. And you said you're going to leave the Jackson argument to your briefs and just focus on whether Edpa deference applies. Am I right? Am I understanding you correctly? I'm not conceding that Jackson does not apply. I understand that. I'm just trying to figure out what we're arguing about. We're arguing about whether Edpa deference applies. That's what you want to focus your argument on, right? Exactly, exactly. You want to focus on whether it applies. And the argument that it doesn't apply, it seems to me, is that the situation where you have a split panel in the state court is analogous not to Harrington, but to the distinction between procedural default and the merits. That kind of a distinction. It's not either one. Which one is it closer to? I mean, there's no answer to that to say, well, now I want to talk about Jackson. Are you with me? I hope so. I want to point out, though, that there's not a split decision. Well, there's clearly a split decision. I think both of us would really like to hear your reasoned argument, since we don't have a precedent on this, why Harrington should apply here rather than the standard if there were a procedural default that were getting passed. I think I suggested in my brief that there might be a procedural default, but I didn't work it out very well. Well, no, I mean, it's not that it is or isn't a procedural default. It's just sort of which situation is this more like, even though it's, I mean, arguably neither. I would prefer procedural default is perhaps a possibility, but I prefer to come back to the question of what was presented to the court. We're not conveying the question clearly enough to you. Let's put procedural default aside. You have to have a decision on the merits in order for there to be epidefference, right? Correct. Right. I'm having trouble seeing what the theory is. Maybe it is, but I'm having trouble seeing what the theory is for where there's a merits decision when, not with respect to whether there's a felonious assault, but whether there is causation of a felonious assault of the murder, all right? That's the issue. That's the Jackson issue. Is there causation? And one judge says there's enough evidence of causation under Jackson because I see this as the felonious assault. And another judge says I see that there's enough connection between a felonious assault and the murder because this different item is a felonious assault. Each one, possibly, apparently, is rejecting the other theory. So you don't have a majority theory on what the causation is. You have two split theories on what the causation is. And when you have that, I can see applying Jackson to support your position, but that's not what you're arguing. You're arguing in that situation epidefference applies. That, I'm having trouble seeing why epidefference applies in that situation. All right. There is no split decision about proximate cause. Two judges said that. Well, I'm not sure which two judges are you talking about, the ones that voted the same way? The concurring opinion and the lead opinion. The concurring opinion says there's a causation. He says majority, you've got it. He says lead opinion, you've got it wrong as to, doesn't he? No, he said at paragraph 150, Your Honor. By the way, let me come off the state court decision altogether. Let me look at this. If you come off the state court decision altogether, then we don't have epidefference. No, but I'm trying to cooperate with the court's question. We have here aiding and abetting proximate cause. And I think the court is concentrating on proximate cause. There was also the aiding and abetting that preceded or is interwoven with the proximate cause. And that was the nature of the conviction. Aiding and abetting, felony murder. Now, the aiding and abetting and the state court gives you at paragraph, I think, 21, plenty of law to talk about aiding and abetting, which is inciting and so on, supporting. That, in turn, leads to the question of proximate cause, which is also in the state court's decision, gives you plenty of state law, starting at paragraph 32. Do you think the two opinions had different theories for why there was causation in this case? No, no. And you got to convince me of that. I read those opinions. It sure looked different to me. Why wasn't it different? Because there was proximate cause. I got the opinion right here. Paragraph 150 of the concurring opinion said that he concurred that there was sufficient evidence based on the state's theory that appellant aided and abetted Cameron Mills in the felonious assault that resulted in Jim Mills' death. The lead opinion, I don't have the specific paragraph, but recited some of the facts of paragraph 94 and 95. That was the view that there was still a proximate cause for the felonious assault and the predicate felonious assault was conceded, in any event, by the defendant. Perhaps paragraph 96 is the holding of the lead opinion, might give you that answer. Sufficient credible evidence of aiding and abetting felony murder and involuntary manslaughter. And that's the same as the causation? Is that what you're talking about? That's where they resolve the causation issue? You have aiding and abetting which is aiding and abetting felony murder, but you have to show, and the state court sets out the state law, aiding and abetting. And as your honor pointed out, Mr. Mills was like the commander of this squad going into combat. And anything can happen when you're wheeling two by fours around with the force of a golf club. And in fact, the victim's head was severed from his spinal cord and he died immediately. So you have Mills, the commander, leading this attack and they're swinging two by fours around. And it's certainly under the law of Ohio, as articulated in the case, reasonably foreseeable that somebody's going to get hurt or possibly killed. So you have aiding and abetting followed by approximate cause. I'm looking at 144 of the concurring opinion. From my review of the arguments of counsel, the primary theory of this case by the prosecution is that he aided and abetted Cameron Mills in committing the felony assault on Jim Mills. So it's a felonious assault by Cameron Mills, right? Yes, sir. The felonious, the predicate offense in this is the felonious assault by Cameron Mills against Jim Mills, right? Is that the felonious assault that's relied upon in the lead opinion? Lead opinion is a felonious assault against Mack Jr., Mack. Okay. So there's one felonious assault, there are felonious assaults against different victims in the two opinions that make up the majority. Yes, sir. Correct? So how can the causation analysis be the same if you're talking about different felonious assaults? That's my question. You say it is the same, right? It's the same analysis, even though it's different? I say it is the same, yes, your honor. Well, isn't that a little counterintuitive? Is it because they both had the effect of inciting these guys to murder Cameron to escalate and swing? That's what I'm trying to say, that if you have the aiding and abetting with the support inciting and so on, it's reasonably foreseeable that somebody's going to get hurt or killed. You go from aiding and abetting to proximate cause and there you are. I mean, he could, both of these things could have incited. Is that what you're arguing? Both of these separate felony assaults, each could have, a jury could find rationally that each of them had the effect of inciting Cameron to do what he did. Absolutely. But when you swing a two by four at a fight with the force of a golf club, and you're leading the attack, it's reasonably foreseeable that somebody's going to get hurt or or die. And the jury applying their experience as jurors recognized that, yes, it sure is, there is a proximate cause there if you're in a fight like that, that somebody's going to be hurt or die. What would your analysis be, and maybe this is all in your brief, what would your analysis be if we were to decide, contrary to your position, that this arguably split opinion meant that Ed Pedefrans did not apply? If we were to go back to the Jackson standard? Much of my brief... Is that easier for you? I would prefer to stay with Ed Pedefrans. No, I understand that. But I understand, yes, we'll go back to the Jackson standard. My answer would be based upon my brief. If you look at Jackson's, excuse me, not Jackson, if you look at Mills' testimony, he says, we went there, I wanted to know who was where. I have my son on this side and this son on this side. And by gummy, we're going to give you an experience to tell you exactly what happens when you knock out a taillight in my vehicle, and we're coming at you. And by gummy, when you start a fight, you finish it. You know, that would be my argument for saying that that shows that he was aiding and abetting and that what he did then approximately caused the death that ensued. And what's the difference between aiding and abetting? Normally, approximate cause, that's a tort concept, and it's after the fact kind of thing. But here, it's whether there was aiding and abetting and whether approximate cause are more or less the same inquiry. Is that the idea? No, sir, I don't say that. I think that the state court is useful, even if you do not consider the state court. It is useful for giving you some Ohio law. Right. And on approximate cause, there is a nice distinction. The dissent said this was a surprising event. And that's one of the terms that's used in the state definition of approximate cause that's recited in the appellate decision. The other two judges said, no, it's not a surprising event. It's foreseeable. So you have surprising versus foreseeable, and there are a lot of other adjectives that go into the mix. And the state court in this said, no, it is foreseeable. It's not surprising. Does that go to whether there was aiding and abetting or not? That actually goes to the approximate cause. The aiding and abetting... I'm just trying to see, you have to find both? Or one is the definition of the other, or we only look at one? They mesh, but the conviction here was aiding and abetting felony murder. So you have to go from one to the other. And so you have to have a causation. You do, but you start... In order to have aiding and abetting, you have to have causation. First of all, you begin with the aiding and abetting, the fight. Then you ask, what is going to happen here in this kind of a fight? If you start this kind of a fight and you're aiding it, then there's proximate cause. Thank you. That's the best I can do, Your Honor. Thank you, sir. I would like to address the ADPA deference issue. But first, let me just circle back really quickly. I think it's very important here, and everyone has been scratching their heads based on the complicity language and which predicate felony was it. The important thing to keep in mind is being involved in this larger brawl or even instigating the larger brawl is not a sufficient predicate for felony murder. That's the predicate that was identified for the felony manslaughter charge. And Mr. Mills doesn't dispute that. But that can't also carry over and support the felony murder charge. And with respect to aiding and abetting, that was just added by the prosecutor to every single charge. I have the jury verdict form right here. It even says that the conviction for the felonious assault of Mack Edwards was aiding and abetting. But the facts underlying that assault were that John directly held a closed knife to Mack's throat and said a bunch of terrible stuff. There's no argument that that was actually aiding and abetting, even though the prosecutor— But if he incites them to go to this melee with, frankly, murderous intent, that's enough to support aiding and abetting here, isn't it? I think as long as there is actual evidence of that, and if the court has identified or the prosecutor has identified which theory of aiding and abetting, if it's aiding and abetting or if it's soliciting and procuring, et cetera, is applicable here. Why does it matter whether the prosecution's identified it? I mean, we have only a sufficiency argument here. Why couldn't we just look at this and say, you know what, forget about the epidephrine issue. Let's just look at this on a Jackson standard. Could a jury find that John incited Cameron in this sequence of events to swing the board against Jim? I think the answer is actually no, and the reason is because this is exactly the case that Gardner's plurality and obviously the dissenting three justices warned against with respect to the fact that this would create a fatal patchwork where there was no clear way for anyone to determine whether the jury agreed on the requisite predicates. That's a different issue than sufficiency, right? I mean, that's some kind of, I don't know what that is, some other part of the Bill of Rights. I mean, this is just, is the quantum of evidence in the record enough to support the conviction as opposed to whether the jury was unanimous? Those are two different things, right? They're both due process concerns. But they're different due process concerns, right? That's correct. So to that, I would say I don't think so. I really don't because everyone who's pointed to how there was some sufficient evidence is looking at this larger melee and not looking at anything in particular that took place within it. Really briefly to address the AIDPA deference here, you're correct, there is no case that addresses this. I think the more appropriate analog here is the procedural one instead of the Harrington one because here we know that the court couldn't actually agree on the relevant inquiry for the AIDPA habeas concern, which was whether there was sufficient evidence. As the court has already pointed out, you can't have two separate predicates and say, everyone agrees that there's causation here because I agree that the car killed the guy, whereas I think that him getting shoved into the street killed him. We're talking about two different things. So there's no causal relationship between both of them and the end result of someone being dead. But it wouldn't be a problem if they said three jurors thought a blue car drove into somebody and three jurors thought a red car blew. They're just different on the color of the car. It wouldn't matter. That's correct. As long as there wasn't actually a blue car. But that goes back to being a unanimity problem. In a sense, it is a unanimity problem, but I guess we're talking now about the Court of Appeals and not a jury. We're not saying could any rational Court of Appeals judge have found X, Y, and Z. We're talking about for the purposes of deference. It was this result that you could presume. I don't think so because in the Harrington line of cases, you have sort of an empty vessel that you can pour into. We just assume that they did this, that, or the other thing. Well, here we know exactly how the sausage was made and it wasn't. I was thinking momentarily about the Jackson. I understand with respect to the headbutt. Okay. Unless you have any further questions. Any questions? No. Thank you, counsel. Thank you very much. Okay. Mr. Giacomo, you are appointed under the Criminal Justice Act. We appreciate your advocacy under that Act. It's a service. So thank you to both of you. Thank you.